JAKE DIETZ, by HERMAN HOLLANDER, his guardian, Claimant, Appellee, v. FARMERS ELEVATOR COMPANY et al., Appellants.

No. 45320.

NOVEMBER 12, 1940.

L. L. Corcoran, for appellee.

Cory & Sackett and Cornwall & Cornwall, for appellants.

SAGER, J.—Jake Dietz will be spoken of as claimant though this proceeding was commenced by his guardian. ' On March 2, 1937, Dietz sustained injuries as a result of a fall in the elevator of the insured defendant. A suggestion is made in the record that the circumstances point to suicide but we are not called upon to pass on that question.

That claimant suffered a severe injury to his skull, probably a fracture, is evidenced by the fact that he was unconscious six or eight days, and semiconscious a week or two. After a period of hospitalization to March 31st, he was taken to the home of his mother to complete recovery. There is some difference of opinion between the medical experts as to whether the insanity with which Dietz is admittedly now afflicted was the result of the injury. If it were necessary to pass on that question we would hold that there was ample evidence upon which to base an affirmative finding.

Sullivan, for 17 years manager of the insurance carrier defendant, failing to get satisfactory answers to correspondence, drove to the home of claimant's mother to see Dietz. The latter was then in the cornfield operating a large cornhusking machine. Sullivan and Dietz agreed upon a settlement. This was evidenced by Exhibit C prepared by Sullivan upon his return to the home office of the insurer defendant at Omaha and sent back for the signature of the claimant. Exhibit C fixed the period of total disability at 22 weeks and one day and provided that compensation be paid at the rate of $15 per week ''from and including the 2nd day of March, 1937, and until terminated in accordance with the provision of the Workmen's Compensation Law of Iowa to the end of the total disability—August 3rd, 1937, inclusive.'' This agreement was approved by the commissioner on November 8, 1937, and the sum called for by its terms was paid by the appellant insurance company. A final compensation receipt was filed on November 26, 1937.

On August 24, 1938, there was filed the application upon which this controversy arose. It alleged that permanent disability (insanity) had developed as the result of the injury of March 2, 1937, and asked for such relief as claimant was entitled to under the law. Both appellants answered that Dietz stood in a representative capacity to his employer and therefore not entitled to any compensation. They alleged that the execution of Exhibit C was due to a mistake of the parties, and denied liability. The answers asked that the settlement evidenced by Exhibit C be set aside. On a hearing claimant's application was sustained and an appeal was taken to the district court. There the finding of the commissioner was approved and from that judgment appeal is taken to this court.

A number of cases are cited but it would be useless labor to analyze them. Some of them deal with propositions so well settled that they call for no discussion. Thus it is said that where there are sufficient facts to support the findings of the commissioner his decision is final; again that where there is no dispute on the facts, the court may review the legal conclusions of the commissioner; and further that on conflicting facts, the finding of the commissioner is final. Appellants argue that the commissioner erred in finding that claimant was an employee rather than one standing in a representative capacity. For reasons which will presently appear we do not discuss this contention.

Appellants' argument, while divided into several grounds, sums up in effect as follows: ''The Commissioner and Trial Court erred in refusing to reopen, correct and change the Memoranda of Agreement because it was erroneously, mistakenly or fraudulently entered.'' Without entering into an analysis of the elements of estoppel as applied to the case before us, we proceed to the considerations which prompt us to hold the judgment of the trial court right. It is said that the execution of Exhibit C was the result of fraud, error or mistake. We have scanned the record and fail to find support for this claim. No attempt was made to show fraud. There was no mutual error or mistake. That the injury claimant suffered held latent possibilities of further disability may be admitted without helping appellants.

The elevator company left the matter of settlement to its insurance carrier and is bound by the result. Sullivan's narration of how the settlement was effected is in and of itself sufficient to warrant the refusal to set aside Exhibit C. The settlement was made eight months after the accident. Nothing was put in the way of ascertaining the true situation. The elevator company and its officers and employees were in a position to disclose everything there was to be told. What then are the reasons now urged for reversal? Sullivan testified:

"I had never investigated the case before; it had been investigated by one of the men in our office, Mr. Miller; he did not check into the facts concerning Mr. Dietz's employment with the elevator company; from the information we had as a result of the investigations and when we made the settlement, we thought he was an ordinary employee. We knew that the reports said he was manager; but when I made the settlement with him I did not know anything about his authorities and duties as manager of the Farmers Elevator Company; had not checked into it. Mr. Miller, in his report of his investigation, made no mention of Mr. Dietz's duties or of his authority or anything of that kind. * * * It had not occurred to us to investigate those matters; we just missed that point in connection with his employment; it did not occur to us to do it. * * * I first learned to the contrary when this action for rehearing was filed before the Industrial Commission; my attention was called to the point by our home office, with a suggestion that the matter be investigated; that was the first time it occurred to me or my office to check into that question of the case; if it had occurred to us before, we would have checked it. * * * We were never convinced the matter was an accident; we confined our investigation in trying to find out, if we could, why this alleged accident had occurred, and we tried to substantiate the theory that it was suicide * * *."

It would seem to require no argument to point out that such a record does not justify setting aside the settlement.

Our recent decision in Trenhaile v. Quaker Oats Co., 228 Iowa 711, 292 N. W. 799, makes extension of this opinion unnecessary. Appellants said that case is distinguishable because only

26 days elapsed in that case in which the injured employee might have resorted to his common-law remedies, while here the time is sufficiently long to obviate the application of estoppel. We are not called upon to base our conclusion on the doctrine of estoppel. Compensation settlements should not be set aside simply because in pursuing a theory as to how the injury was sustained, the insurance carrier overlooks matters so palpable as to make it difficult to see how they could have been missed. Appellants' explanation as to why it was signed affords no reason for setting aside the memorandum of settlement, nor justification for holding that the findings of the commissioner are not in accord with the workmen's compensation act.

The ruling of the district court in sustaining the commissioner was right and its judgment is affirmed.—Affirmed.

RICHARDS, C. J., and MILLER, HALE, HAMILTON, MITCHELL, STIGER, and OLIVER, JJ., concur.

BLISS, J., concurs in result.