RILEY DIETZ, Appellant, v. PIONEER HI-BRED CORN COMPANY et al., Appellees.

No. 45746.

December 9, 1941.

Clemens A. Werner and Otis Gilbrech, for appellant.

Lane & Waterman, for appellees.

Oliver, J.—Riley Dietz prosecutes this appeal from a judgment of the district court affirming a reopening opinion, decision and award of the industrial commissioner, which cancelled a memorandum of agreement for compensation, theretofore approved by said commissioner, between appellant Dietz, as employee, and appellees Pioneer Hi-Bred Corn Company and Eagle Indemnity Company, as employer and insurer respectively.

On September 2, 1939, the manager of the corn company, at Durant, Iowa, engaged appellant to spray-paint certain of the company's buildings. Appellant told the manager he had done a large number of painting jobs, had operated two or three jobs at the same time, and then had other jobs under way. He refused to "contract" the work for a lump sum. It was agreed appellant should furnish the spray machine, ladders, and tools and should be paid 50 cents per hundred square feet. The spray machine consisted of a small gasoline motor, air compressor, a ten-gallon tank, hose and spray gun. It cost $300 and weighed 600 pounds. No particular hours of work were assigned to appellant. The company furnished all the paint, except one quart. Appellant testified he had a quart of black trim paint in his truck and used this because the company had none on hand and to procure it would have necessitated the company's sending someone to Davenport. On Saturday, September 9th, appellant brought another man on the job for that day. Appellant paid this man. Appellant testified he explained to the manager that he had promised to do painting for another party the following

week, and asked the manager if he might bring help for that day so he could finish that part of the job. While the work was in progress the manager kept in touch with it, inspected it, pointed out certain defective work to be repainted and instructed appellant to paint a portable dryer and some supply tanks, which were on wheels.

On Saturday, September 9th, appellant, while painting one of said buildings, fell from a ladder belonging to the company and received an injury to his right heel. Because Dietz was not on the regular payroll, the manager at Durant had some doubts whether he was entitled to workmen's compensation and consulted with his (the manager's) superior. Thereafter, on September 16, 1939, the manager prepared and sent to the home office of the company a written instrument, entitled "Employer's First Report of Injury." This report was filed with the industrial commissioner by the claims attorney for the insurance company, September 25, 1939.

On October 5, 1939, the claims attorney mailed appellant a memorandum of agreement for compensation with a check based upon a wage of 35 cents per hour and a letter requesting the execution and return of the memorandum. On October 12th, these papers were returned to the insurer with a notation thereon by appellant of an error in the nature of the injury. The claims attorney then took up with the corn company the question of appellant's earnings. Another conference between the Durant manager and his superior resulted in their estimating and reporting to the insurance company that the average daily earnings of appellant was $6. On October 12, 1939, the claims attorney forwarded a corrected memorandum of agreement to appellant. This was executed by appellant, was returned to the insurance company, and was filed with and approved by the Iowa industrial commissioner, October 16, 1939.

Said memorandum of agreement names the employee, employer and insurer, states the employee and employer have reached an agreement in regard to compensation for the injury sustained by the employee, sets out the date, nature and cause of the injury, states that the probable duration of temporary disability is not known, lists the daily earnings at $6, and computes the compensation at $15 weekly and provides that Dietz shall be

paid $15 weekly compensation from September 24, 1939, and until terminated in accordance with the provisions of the Workmen's Compensation Law of Iowa.

Weekly payments of compensation were continued to October 28, 1939. At that time a controversy arose as to the continuance of appellant's disability. It does not appear that appellant was then represented by attorneys. The insurance company had retained attorneys in Davenport to represent it in this phase of the case and these lawyers, on January 4, 1940, secured a written statement from appellant, which led the claims attorney to believe the compensation claim might be defeated on the ground appellant had been working for the corn company as an independent contractor. The attorneys made further investigation, and on April 30, 1940, filed with the industrial commissioner a petition for order setting aside settlement agreement. It was therein alleged that plaintiff was working as an independent contractor when injured and that he fraudulently and wilfully deceived the insurance company by concealing said fact and thereby induced the execution of the memorandum of agreement; that said execution was induced by fraudulent silence and by mistake of fact; that the commissioner would not have approved the memorandum had he known the facts and would have been without jurisdiction to award compensation.

The answer alleged appellant was an employee of the corn company; denied any fraud or concealment on his part, alleged the employer and insurer knew the facts concerning his relationship with the employer; alleged the memorandum was prepared by appellees and presented to him for signature after full opportunity to investigate and after investigation on their part; alleged appellees were estopped to deny they were guilty of negligence or acted upon an erroneous assumption of law or fact; and alleged the industrial commissioner had jurisdiction to approve the memorandum.

In the opinion and decision, the industrial commissioner, after discussing various phases of the record, found that appellant's status turned on the use of the paint-spray machine, stating:

"Thus were it not for the facts relating to the machine, and it was shown that claimant personally rendered the service

without the aid and investment of a designed profit making device, we are of the opinion that in the instant case claimant would be classified as an employee. * * * Confronted as we are with this situation we are constrained to believe that claimant was engaged in a private enterprise and therefore an independent contractor within the meaning of the law."

The conclusions hereinafter reached render unnecessary the determination of the correctness of the foregoing finding or of the basis thereof. Whether a painter, capable of earning more than $1 per hour by the use of his paint brush, becomes a contractor when he applies the paint with his spraying outfit at approximately $6 per day, is, we think, a question which is open to serious doubt. If this be considered in connection with the finding of the able commissioner that, but for the use of the spray, he would have classified appellant as an employee, it indicates that the question of appellant's status was one upon which courts might not agree.

This bears upon appellees' contention that appellant's claim was fraudulent and wholly without foundation. The commissioner held appellant was not guilty of fraud in connection with the execution of the memorandum, and that the record disclosed "a case of open, frank dealing, nothing hidden or misrepresented." The record amply supports this holding and we concur in it. The opinion also stated that the error was due to an incorrect interpretation of the facts and the law with which the parties were confronted and also "that the error was one due to a misunderstanding of the law."

However, the commissioner decided that the parties were in error in executing and filing the memorandum and the commissioner in approving it, and that such approval would not have been given but for the failure on the part of the employer and employee to furnish the true facts as now disclosed by the record. Continuing, the decision states:

"We do not hold that there is or was any actual fraud or intent thereof. The most if anything that can be said in that respect is that a failure to present the commissioner with all of the facts as now presented operated as a constructive fraud."

Accordingly, the commissioner cancelled the memorandum of agreement and his approval thereof and disapproved the same. Said ruling and finding was affirmed by the district court. Its propriety is questioned by this appeal.

Section 1436 of the 1939 Code concerns compensation agreements. It provides, in part:

"Such agreement shall be approved by said commissioner only when the terms conform to the provisions of this and the preceding chapter."

In Forbes v. Ottumwa Sand Company, 216 Iowa 292, 249 N. W. 399, a memorandum of settlement providing for compensation at $10.38 per week had been approved by the commissioner. Later, upon application of the claimants, the commissioner found the rate should have been $15 per week and so ordered. This court found the original memorandum was invalid on its face because of Code section 1415, which forbids a waiver by the employee in regard to the amount of compensation, and section 1378, which forbids the relieving of the employer from any liability created by the chapter. And it was held that in as much as the memorandum was invalid on its face, the order of approval by the commissioner was equally invalid and could not operate as a bar to a valid order.

Comingore v. Shenandoah Art. Ice Company, 208 Iowa 430, 440, 226 N. W. 124, 129, involved an application by the insurer to the commissioner to terminate payments upon an approved memorandum on account of the remarriage of the widow who was the sole dependent. The memorandum, which was not a lump sum settlement, recited "amount of compensation agreed upon $4,500." The insurer contended this meant compensation at $15 per week for 300 weeks unless sooner terminated by an event provided by the act, such as the remarriage of the widow. In affirming the order of the trial court which affirmed the order of the commissioner terminating the payments, the court held the issue before it was the proper interpretation of the memorandum; that as contended by the insurer, it meant just what the compensation act intended, and that the compensation act permits the parties, by such memorandum, to agree to no more and no less than the statutory compensation. And the court said:

"Errors in approving a memorandum of settlement should be corrected by the Iowa industrial commissioner when brought before him by any of the parties interested in such a settlement. We recognized this method in Kramer v. Tone Bros., supra [198 Iowa 1140, 199 N. W. 985], and in the cases herein cited."

However, all matters contained in a memorandum of settlement have not been considered to be in one classification. We quote from Tebbs v. Denmark L. & T. Corp., 230 Iowa 1173, 1176, 300 N. W. 328, 329:

"With respect to the memorandum of agreement, the Commissioner stated [in his certificate]:
" 'The department has heretofore, for many years last past, interpreted the memorandum of agreement as settling two propositions, the employment contractual relation and the injury as one arising out of and in the course of the employment, leaving the question with reference to extent of disability open for adjustment in accordance with the facts as the facts may be, providing that application therefor is made within the period of the statute of limitations as provided by section 1457.' "

This interpretation quoted in the Tebbs case appears to accord with holdings of this court. Thus Forbes v. Ottumwa Sand Company, supra, and similar cases involved propositions other than the employment contractual relation or whether the injury arose out of and in the course of the employment. And in those cases, the only proof required to change the approved memorandum was that it was erroneous. But that part of an approved memorandum of agreement which settles the employment contractual relation may not be cancelled merely by showing it to be erroneous.

Trenhaile v. Quaker Oats Company, 228 Iowa 711, 292 N. W. 799, involved an attempt to defeat a claim for additional compensation by proof of such error. This court refused to consider the alleged error, holding that the employer had, by its conduct, waived the right and was estopped to assert the claimant was not an employee within the purview of the act.

Fickbohm v. Ryal Miller Chevrolet Company, 228 Iowa 919, 925, 292 N. W. 801, 803, held that a contention of error in "an

acknowledgment and determination of the existence of the relationship of employer and employee'' would not be considered, the agreement not being set aside or attacked on the ground of mutual mistake or fraud. And it would seem to us that the mutual mistake or fraud must be such as would justify the cancellation or modification of contracts in general.

Appellees insist appellant was guilty of fraudulent misrepresentations and silence. We have already disposed of this phase of the case. It may be noted there is no contention that the officers of the corn company misrepresented or concealed from its insurer any facts or circumstances connected with the case.

The employer had full knowledge of appellant's status. Its representatives had considered and discussed the effect upon said status of the manner in which the company was to pay Dietz for his work. It left the settlement to its insurer. Under the circumstances the knowledge and acts of either the principal or the surety were binding upon both.

Appellees' evidence indicates the so-called mistake on their part was due to their overlooking matters clearly before them. Their excuse was that they customarily handled such matters in this manner. We do not think this explanation sufficient to acquit them of negligence. Specific negligence may not be excused by proof of habitual negligence. Appellant was not a lawyer. He was not mistaken as to the facts relating to his status. Whether or not his conception of the law was erroneous might be questioned.

The record in this case is strikingly similar to that in Dietz v. Farmers Elevator Company, 229 Iowa 335, 338, 294 N. W. 571, 572. In each case a memorandum of settlement was approved and compensation payments were made and terminated. In each additional compensation was afterwards claimed and the employer and its insurer then contended the memorandum of agreement was erroneously, mistakenly or fraudulently entered. In each there was a failure to prove fraud, in each the claim of mistake was substantially the same and in each a similar excuse for the so-called mistake was made by the employer and insurer. In the cited Dietz case (the Mr. Dietz in the case at bar is a different person) this court used the following language:

228

"It would seem to require no argument to point out that such a record does not justify setting aside the settlement."

That statement is likewise applicable to the record in the case at bar. We conclude this case is governed by Dietz v. Farmers Elevator Company, supra. The case is reversed and remanded with instructions to remand the same to the industrial commissioner for further proceedings not inconsistent herewith. —Reversed and remanded.

MILLER, C. J., and HALE, BLISS, GARFIELD, MITCHELL, and STIGER, JJ., concur.