Dick's Delicatessen of Paoli, Inc., Petitioner *v.* Workmen's Compensation Appeal Board (DeVirgilio), Respondents.

Argued April 5, 1984, before Judges CRAIG, BARRY and PALLADINO, sitting as a panel of three.

*David J. Rosenberg,* with him, *Gary A. Hurwitz,* for petitioner.

*Richard L. Cantor, Lentz, Riley, Cantor, Kilgore & Massey, Ltd.,* for respondent.

OPINION BY JUDGE CRAIG, May 16, 1984:

Dick's Delicatessen of Paoli, Inc. appeals an order of the Workmen's Compensation Appeal Board affirming a referee's award of benefits to Richard De-Virgilio.

We must determine[1] whether the board correctly concluded that the claimant's disability was work-related and that he provided adequate notice to the employer and the workmen's compensation insurance carrier as required by The Pennsylvania Workmen's Compensation Act.[2]

In 1976, Mr. DeVirgilio was the president, chairman of the board and 60% shareholder of the family-owned delicatessen business. His wife and children owned the remaining shares and held the other corporate offices and seats on the board. Mr. DeVirgilio acted as manager of the business which consisted of the operation of a restaurant and retail sales of various gourmet foods.

On December 22, 1976, the restaurant and store were exceptionally busy because of the holiday season. Mr. DeVirgilio testified that he carried several heavy baskets of fruit up a flight of stairs from the basement of the restaurant immediately after having a "heated argument" with an employee about the handling of a customer. Shortly thereafter, Mr. DeVirgilio told one of his sons, who was working with him in the store, "I think I am having a heart attack. You'd better take me to the hospital."

The son drove Mr. DeVirgilio to Paoli Memorial Hospital where the doctors admitted him to the intensive care unit. He had significantly elevated blood pressure and was having frequent premature ventricular contractions with loss of blood to the brain. The doctors diagnosed his condition as a stroke. Mr. De-

[1] Where the party with the burden of proof prevailed below, our review is limited to a determination of whether constitutional rights were violated, an error of law was committed or necessary findings of fact were unsupported by substantial evidence. *Cislo v. Johnstown Housing Authority*, 49 Pa. Commonwealth Ct. 293, 410 A.2d 979 (1980).

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1-1603.

Virgilio's medical history revealed no heart disease or other illnesses requiring the attention of a physician within the three years preceding his stroke.

The doctors at Paoli Memorial released Mr. DeVirgilio on January 1, 1977, but readmitted him on January 4, 1977, because he was exhibiting increased symptoms of stroke. Mr. DeVirgilio was finally discharged from the hospital at the end of January, 1977. However, the residual effects of the stroke, including chest pain, fatigue, and loss of concentration and speech skills continue to prevent him from returning to work.

Mr. DeVirgilio testified that he notified the agent for the company's workmen's compensation insurance carrier two or three months after the stroke, but did not file a formal claim petition until March 12, 1979. The referee awarded benefits and the board affirmed. This appeal followed.

The petitioner's[3] first contention is that Mr. DeVirgilio failed to meet the burden of proving a causal connection between his work and his disability. Where the connection is not obvious, the claimant must present unequivocal medical testimony establishing causation. *Sears and Roebuck Co. v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 161, 409 A.2d 486 (1979). The claimant's physician, Dr. Coates, testified that Mr. DeVirgilio's stroke and residual effects were caused by the work-related stress he experienced on December 22, 1976.[4] The petitioner, on the other hand, introduced a letter from a physician,

---

[3] The party with a real interest in this appeal is, of course, the insurance carrier, rather than the employer.

[4] Dr. Coates testified:

Q. Doctor, do you have an opinion as to the relationship between the fight or argument and the carrying of the baskets of fruit and the contractions?

Dr. Wagner, who examined Mr. DeVirgilio and opined that the stroke and continued symptoms were caused by the claimant's pre-existing physical condition (diabetes) rather than the work-related stress.[5] Of course, the fact that the claimant has a pre-existing disease or condition not caused by his employment is not a bar to eligibility "where work-related exertion causes the victim of such conditions to have a heart attack or suffer other . . . disabling symptoms." *Penn Cambria School District v. Workmen's Compensation Appeal Board*, 52 Pa. Commonwealth Ct. 244, 247, 415 A.2d 943, 945 (1980).

---

A. Well, that is like an extreme stress test, and it produced excessively high blood pressure and extra strain or workload on the heart. The heart was not able to handle this emotional upset plus physical stress and resulted in the EKG changes and irregular heartbeats and so-called ischemia or perhaps even a stroke, mild strokes.

. . . .

Q. Doctor, do you have an opinion in this case as to which the event was that set this off?

A. Well, I think the whole thing was set off by his initial episode when he came in the fist time, when he apparently got extremely upset emotionally, and then went through all this physical stress. As I say, it is an extreme stress test.

Q. And by that you are referring to the physical and emotional stress at work on the twenty-second?

A. That is right.

[5] Dr. Wagner stated in his report:

In answer to your question (1) I would say that the symptoms he described were consistent with either a developing heart-attack or cerebral vascular thrombosis. He described to me that he had both dizziness and weakness at the time; (2) I believe that it is reasonable to conclude that his problems at that time were the sole result of his physicial condition and not necessarily work related stress; and (3) I believe the Claimant's recurrent problems for which he was hospitalized could again be the result of his physical condition rather than to work related stress.

We are satisfied that, through the testimony of Dr. Coates (see note 4), Mr. DeVirgilio met his burden of proving that his stroke was caused by work-related stress. Determinations of credibility and the choice between conflicting competent medical testimony are within the exclusive province of the referee. *John Sexton and Co. v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 219, 425 A.2d 1212 (1981). The referee has broad discretionary powers, and may accept or reject the testimony of any witness, in whole or in part, even where a witness' testimony is internally inconsistent. *K-Mart Corp. v. Workmen's Compensation Appeal Board,* 56 Pa. Commonwealth Ct. 52, 424 A.2d 956 (1981). Thus, we do not believe that the referee erred in attaching more weight to the testimony of the claimant's expert than the petitioner's expert, and we conclude that there is substantial evidence to support his finding of a causal link between Mr. DeVirgilio's work and his disability.

The petitioner also contends that Mr. DeVirgilio did not comply with mandatory notice requirements under the Act, and therefore forfeited whatever right to benefits he may otherwise have had.

Section 311 of the Act, 77 P.S. §631, provides in part:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employee . . . shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

Insofar as all of the corporate officers, shareholders and directors were members of Mr. DeVir-

gilio's immediate family and all of them had actual knowledge of his stroke, there can be no doubt that the requirements of section 311 were fulfilled. *See Findlay Refractories v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 454, 415 A.2d 1270 (1980).

The petitioner argues, however, that where, as here, the claimant is also the employer, the claimant must give notice to the insurance company in order to permit a prompt investigation of the claim; failure to notify the insurer would result in forfeiture of benefits according to this argument. However, we decided this issue otherwise in *Travelers Insurance Co. v. Workmen's Compensation Appeal Board,* 68 Pa. Commonwealth Ct. 24, 447 A.2d 1116 (1982), holding that section 311 does not require notice to the workmen's compensation carrier where the claimant is also the employer. "The fact that claimant was the principal officer of a small corporation in no way limits the claimant's right under the Act," *id.* at 27, 447 A.2d at 1118, nor enlarges his duties.

The petitioner points to section 438 of the Act,[6] which requires the employer to report immediately all work-related injuries to its workmen's compensation carrier, and argues that noncompliance results in forfeiture of benefits. We understand the insurer's concern in these cases where the claimant and the employer, who ordinarily have interests adverse to one another, are interrelated. Without some provision for the enforcement of the employer's duty to provide the workmen's compensation carrier with prompt notification of work-related injuries, the claimant-employer

---

[6] 77 P.S. §994, which provides in part:

An employer shall report all injuries received by employees in the course of or resulting from their employment immediately to the employer's insurer.

could sit on his claim indefinitely, later requiring the insurer to defend a claim which it did not have a meaningful opportunity to investigate. However, unlike section 311 of the Act, section 438 does not contain any forfeiture language, and we find no basis for reading such language into that section. The rights and duties of the employer and the workmen's compensation carrier are contractual matters to be agreed upon by the parties and set forth in the policy of insurance, rather than determined by the legislature. The workmen's compensation carrier can guard against possible abuse of the Workmen's Compensation Act by close corporations and sole proprietorships by conditioning coverage on compliance with mandatory prompt notification provisions written into the insurance contract. Issues concerning the interpretation and fulfillment of contractual provisions of the policy are not for the workmen's compensation authorities to decide, but can be litigated in a civil action between the parties to the contract.

Because the insurer can contractually mandate and enforce prompt notification, its argument, that the absence of a statutory enforcement provision in section 438 of the Act violates its constitutional due process rights, is not persuasive.[7]

We conclude that substantial evidence supports the board's finding that Mr. DeVirgilio's disability is work-related, and that he complied with the notice provisions of the Act.

Accordingly, we affirm.

---

[7] Issues not raised before the referee or board are usually deemed waived. *Aston Hill Manufacturing Co. v. Workmen's Compensation Appeal Board*, 56 Pa. Commonwealth Ct. 20, 423 A.2d 1135 (1981). However, this constitutional challenge to the Workmen's Compensation Act must be considered although raised for the first time on this appeal. Pa. R.A.P. 1551 (a)(1).

### ORDER

Now, May 16, 1984, the order of the Workmen's Compensation Appeal Board, No. A-81789, dated January 4, 1982, is affirmed.