**ROCKWELL GRAPHIC SYSTEMS,
INC., Appellant,**

v.

**Barbara D. PRINCE, Appellee.**

No. 84–878.

Supreme Court of Iowa.

April 17, 1985.

John M. Bickel and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

David A. Scott of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal presents three issues for consideration: whether the district court erred in placing the burden of proof on the employer to establish that the worker's injuries were not incurred in the course of

employment; whether, if so, the record as a whole supports the findings of the agency; and whether the agency's decision was sufficient in form.

The facts are hotly disputed. From the record as a whole the worker's compensation agency could find as follows. Barbara O'Brien Prince, the employee, was hired by Goss Division of Rockwell Graphics Systems, Inc. (Goss), on May 24, 1980. On July 8, 1980, while climbing down from an overhead crane, she slipped when she placed her foot upon a loose bolt on the floor and landed on her buttocks with her hands on the floor. She immediately reported the accident to the company nurse, Steven Bertch.

We note that nurse Bertch's version of Prince's report of the occurrence was markedly different. He stated Prince reported "she was working in the sub-assembly area and had been reaching into a basket, was lifting out a part, and felt something pull or tingle in her back"; she pointed to an area of her back above the belt line and to the side of the midline; and she made no reference to the coccygeal area of her buttocks.

Prince attempted to stay at work through the evening, but she found the pain too intense and obtained an excuse for the rest of the night. In the morning she contacted the day nurse, Rita Swearingen, who made an appointment with the company doctor, Frederic J. Sloan. Dr. Sloan began examining Prince but was called away after a minute or two when another worker fainted. He did not perform a rectal examination nor did he take X-rays. He diagnosed low back strain, and excused Prince from work for five days until July 14, 1980. At the time of the accident Prince testified she weighed 182 pounds. She is five feet, seven inches tall.

During the period away from work Prince contracted poison ivy on the soles of her feet, which delayed her return to work until July 24, 1980. She then returned but was unable to stay at work due to back pain. She did not return to work again until August 25, 1980, when she was repri-

manded for absenteeism. She tried to do her job, but found the pain intense.

Prince went to see L.S. Siekerka, a chiropractor, on November 6 and December 11, 1980. At this time, she weighed 150 pounds. She stated that this was due to constipation and pain on elimination as a result of the injury. She quit eating to try to avoid the pain, but the more weight she lost the more discomfort she suffered.

On February 27, 1981, Prince went to her family physician, Richard G. Kirsch. Dr. Kirsch performed a rectal examination and noted that her coccyx was deformed with a deviation to the left. He made an appointment for March 13, 1981, with James W. Turner, an orthopedist.

By March 2, 1981, Prince was unable to stand the pain of sitting in the crane any longer, and reported to medical aid. Nurse Bertch told her to report to sub-assembly. She did so and was given a standing job. One-half hour later the union steward and final assembly foreman came and told her to return to the crane. She said that she could not work in the crane, and she was told to go home. She made a formal claim for a standing position but the request was denied.

At Goss' request, Prince made another appointment with Dr. Sloan on March 3. She went to the appointment, and Dr. Sloan did a rectal examination. At her appointment on March 13, Dr. Turner also did a rectal examination, and he took X-rays. He instructed her on different ways of sitting which might alleviate the pain. The pain persisted. By this time Prince weighed 135 pounds.

On May 6, 1981, Dr. Turner recommended to Prince that she have her coccyx removed (coccygectomy). Dr. Turner sought a second opinion from Albert R. Coates, another orthopedist. Dr. Coates was reluctant to perform a coccygectomy because he thought the pain would merely be transferred higher up the spinal column.

On May 27, 1981, Prince was deposed by Goss. At that time Goss representatives told Prince they would rehire her for a

standing-position job; they contacted Dr. Turner, and he stated that Prince could take this sort of job.

Prince reported to medical aid on June 1, and the nurse told her to report to the sub-assembly department. The foreman of that department did not know that Prince would be coming, but gave her a job which normally involved sitting due to the presence of parts on a low table. Prince tried to do the job but, as the work required her to bend over, her back caused her pain. She called Dr. Turner for pain medication, but he was not in the office. She was referred to W.J. Robb, still another orthopedist. Dr. Robb examined her, stated that she had suffered enough, and scheduled surgery for June 15, 1981.

After the surgery, Prince continued to be in pain, and suffered painful popping and cracking noises when she walked or did leg lifts. On August 12, she saw Dr. Turner again, and he stated that he did not know what caused the popping and cracking, but told her that she could return to work in one week. She returned from her visit with Dr. Turner only to be informed by the union steward and her employer that as of August 17, 1981, she was being laid off.

A friend referred Prince to John Walker, a Waterloo orthopedist. Dr. Walker requested that Prince's counsel arrange the appointment, which he did. On May 5, 1982, Dr. Walker examined Prince and made an immediate diagnosis of the problem that caused the popping and cracking. He stated that she had certain congenital abnormalities of her lower spine and sprains of the lower spinal segments. He recommended injections for the sacroiliac joint; traction; and other therapy.

Prince also consulted her present family physician, Richard Rowe; Dr. Kirsch had meantime moved away.

Prince next initiated the instant review-reopening worker's compensation proceeding. A hearing deputy heard the case, and in a detailed ruling awarded her certain benefits. Goss appealed within the agency and, after full hearing, the hearing deputy's decision was affirmed by the agency through a deputy commissioner.

Goss then sought judicial review. The district court affirmed the decision of the agency in all respects. Goss thereupon appealed to this court.

Our scope of review is limited. The basic questions are whether the district court correctly applied the law and whether the facts as found have substantial evidentiary support. If, so, we affirm. If not, reversal may be in order. *Caterpillar Davenport Employees Credit Union v. Huston*, 292 N.W.2d 393 (Iowa 1980); *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

I. Goss complains that the district court erred in requiring it to prove that Prince's injuries were *not* work related, whereas complainant has the burden to show that in fact the injuries *are* work related.

Goss states the rule correctly. *Freeman v. Luppes Transport Co., Inc.*, 227 N.W.2d 143 (Iowa 1975). In *Freeman* we enunciated that the employee must establish three principal elements:

> (1) an employer-employee relationship at the time of the injury, (2) *an injury arising out of and in the course of the employment*, and (3) the disability (or death) proximately caused by the injury.

*Freeman* at 148 (citations omitted, emphasis added).

In this case the district court inaccurately stated the burden of proof when it said:

> The question before the Court, therefore, is whether Goss proved as a matter of law that claimant's injury on July 8, 1980, did not cause her to break her tailbone or cause the back problems of which she now complains.

Actually, the question before the court was whether Prince generated a fact question on the issue, upon the entire record. We will assume for purposes of decision that Goss is right, the court misapplied the burden of proof.

This misapplication does not, however, automatically require a reversal. We must examine the record to determine whether the *agency* used the correct burden of proof. The agency made the same findings as the hearing deputy made in the original review-reopening decision:

### FINDINGS OF FACT

1. Claimant was employed by defendant employer on July 8, 1980.

2. Claimant injured her coccyx when she fell at work.

3. Defendant filed a memorandum of agreement.

4. Claimant's injury caused permanent disability to the body as a whole to the extent of 20 percent.

5. Claimant was disabled from work from March 2, 1981, through August 17, 1981.

6. Claimant's medical expenses are related to the injury, and are fair and reasonable.

7. The rate of compensation is $222.26.

### CONCLUSIONS OF LAW

1. This agency has jurisdiction of the parties and subject matter.

2. Claimant was employed by defendant employer on July 8, 1980.

3. Claimant sustained an injury arising out of and in the course of her employment on July 8, 1980.

4. Claimant is entitled to healing period compensation for a period of 24 1/7 weeks.

5. Claimant is entitled to permanent partial disability compensation for a period of 100 weeks.

6. The medical expenses shall be ordered to be paid.

In arriving at his findings and conclusions the deputy commissioner applied the correct law to the burden of proof; he stated in this decision:

Based on the foregoing principles, it is found that *claimant has established her burden of proof* that she sustained an injury arising out of and in the course of her employment.

(Emphasis added.) The question, therefore, is whether substantial evidence in the record as a whole supports the deputy commissioner's findings.

II. We have said, "Evidence is 'substantial' when a reasonable mind would accept it as adequate to reach a conclusion." *City of Davenport v. PERB*, 264 N.W.2d 307, 311 (Iowa 1978). *See Peoples Memorial Hospital v. Iowa Civil Rights Commission*, 322 N.W.2d 87 (Iowa 1982).

A. We first consider the issue of substantial support for the finding that the injury arose out of and in the course of the employment.

Prince saw several doctors during the course of this case. Five, however, had a significant connection with it. They are: Dr. Sloan, the company doctor, Dr. Siekerka, the chiropractor, Dr. Kirsch, the family physician, Dr. Turner, an orthopedic specialist, and Dr. Walker, another orthopedist. In addition, the testimony of the company nurse, Steven Bertch, is relevant. We have examined the testimony of each of these individuals in the time sequence in which Prince saw them, and will state the essence of their testimony.

Following the accident, Prince went to the company nurse on duty, Bertch. This was about 6:00 p.m., July 8, 1980. Bertch testified she came to him and stated that she had been working in a sub-assembly area; that she said she had been reaching into a basket and when she lifted a metal casting she felt something pull or twinge in her back; that she had felt the pain above her beltline; and that Prince had not made any mention to him of stepping on a bolt. Prince sought to question this testimony by showing that Bertch did not make his report until two weeks afterward and also incorrectly reported that Prince worked in sub-assembly.

Prince was told to report to Dr. Sloan the day following the accident. Dr. Sloan's examination of her was truncated when he was suddenly called away. He was not

deposed for trial, and Goss did not state why he was not available. Dr. Sloan did, however, send a letter to Avonelle Eide, the safety director at Goss, dated March 12, 1981, and a letter to John M. Bickle, counsel for Goss, dated June 19, 1981. In the letter to Eide, Dr. Sloan stated that he first saw Prince on July 9, 1980, and that she said she had stepped on a bolt at work, slipped, but caught herself and felt her back "pop." Similarly, in the letter to Mr. Bickle, Dr. Sloan stated that Prince had said "she stepped on a bolt at work and slipped, but caught herself and felt her back pop." This testimony is not basically inconsistent with the testimony of Prince. It does not correspond in every detail with her version of the events, but neither is it contradictory in the main.

Prince also saw Dr. Siekerka, hoping that he could ease her pain. His letter to Mr. Bickel does not state the history of Prince's condition. It does state, however, that she visited him on November 6, 1980, with "Sacro-lumbar pain sciatic neuritis" and again on December 11, 1980, for "Last visitation by Mrs. Prince for recurrance of lower spinal symptoms." This evidence is not in contradiction with the symptoms that Prince claims were as a result of the injury on July 8, 1980.

Dr. Kirsch was Prince's family physician at the time of the injury. His letter to Mr. Bickel discloses the following:

2/27/81 fell on coccyx last summer—coccyx deformed with deviation to the left—referred to orthopedic (see attached correspondence)

Here again we see no basic discrepancy between Prince's version of the injury and Dr. Kirsch's information.

Dr. Turner was the orthopedic specialist to whom Dr. Kirsch referred Prince. In his letter to Dr. Kirsch, Dr. Turner gives Prince's history as follows:

I saw Barbara Prince in the office on March 13, 1981. She is a twenty-nine year old lady who fell last summer while at work at Rockwell/Goss. She stated she was climbing down from the overhead crane where she works, fell the last three steps landing on her coccyx.

We find no basic discrepancy with Prince's testimony.

Mr. Walker's letter to Dr. Scott, counsel for Prince, gives the following history:

The patient states that she was coming down the ladder, off the crane when she stepped to the floor she stepped on a bolt which made her slip, lose her balance and fall, sitting directly on her buttocks.

Once again, this history does not substantially deviate from the description of the accident given by Prince, and it does not basically contradict her version.

■ Our review of the evidence of the way the accident occured leads us to conclude with no difficulty that substantial evidence supports the finding of the agency as to injury in the employment. The only substantially inconsistent history given was by Nurse Bertch. The agency could accept Prince's version of the events leading to her injury as reinforced by her doctors' reports. We do not suggest that the agency could not have found an injury arising out of and in in the course of employment even if Bertsch's testimony were accepted as correct.

B. Goss also raises a question regarding the finding of twenty percent permanent partial disability. Goss contends that the agency's finding is not supported by substantial evidence because Dr. Turner stated he believed Prince would not suffer any permanent disability as a result of the accident, whereas Dr. Walker, who testified she would be permanently partially disabled by roughly 25 percent, was consulted for litigation purposes and not until later.

Goss cites no Iowa cases for the proposition that a treating physician's opinion must be accorded more weight than that of a subsequent specialist. The cases Goss does cite are not controlling on this court and they are highly fact-specific. Illustrative is *Haga v. Clay Hyder Trucking Lines*, 397 So.2d 428 (Fla.App. 1 Dist.1981). In that case the court took great care to limit its decision to the facts of the particu-

lar instance. The remainder of Goss' cited cases similarly turn on the facts before the respective courts.

In this case, Dr. Turner was an orthopedic specialist consulted by Prince to help her determine the cause of and hopefully a cure for her back pain. He stated the coccyx was deviated and recommended that it be removed. He also stated he could not determine the cause of the painful popping and cracking when she moved her leg. Dr. Walker, on the other hand, determined that the symptoms were due to a congenital abnormality which resulted in open sacral segments of L–3, L–4, and L–5. He also stated that while coccygectomy is the normal treatment for this type of ailment, given Prince's peculiar situation the pain would likely be transferred up the spinal column. Dr. Walker did state, however, that he would also have tried the coccygectomy. While we do not cast aspersions as to Dr. Turner's abilities, the record makes clear that Dr. Walker is also a competent orthopedic specialist.

■ We think a rule of law would be unwise that a treating physician's testimony should be given greater weight than that of a later physician who examines the patient in anticipation of litigation. The employer should and does have the right to develop the facts as to a latter physician's employment in connection with litigation, his examination at a later date and not when the injuries were fresh, his arrangement as to compensation, the extent and nature of his examination, his education, experience, training, and practice, and all other factors which bear upon the weight and value of his testimony. The claimant may similarly develop such information as to the treating physician. Both parties may press all of this information to the attention of the fact finder, as either supporting or weakening the physician's testimony and opinion. All these factors, however, go to the value of the physician's testimony as a matter of *fact*, not as a matter of *law*. *Musselman v. Central Telephone Co.*, 261 Iowa 352, 360, 154 N.W.2d 128, 132 (Iowa 1967); *Paulson v.*

*Idaho Forest Industries, Inc.*, 99 Idaho 896, 901, 591 P.2d 143, 148 (1979); *Arcole Midwest Corp. v. Industrial Comm'n*, 81 Ill.2d 11, 16, 39 Ill.Dec. 776, 779, 405 N.E.2d 755, 758 (1980); *Yocom v. Emerson Electric Co.*, 584 S.W.2d 744, 748 (Ky.App. 1979); *Moscarelli v. Moscarelli Funeral Home*, 55 A.D.2d 762, 390 N.Y.S.2d 223, 224 (1976); *Dick's Delicatessen of Paoli, Inc. v. W.C.A.B.*, 82 Pa.Cmwlth. 444, 475 A.2d 1345, 1348 (Pa.Cmwlth.1984). We conclude that the weight of Dr. Walker's opinion was for the agency as fact finder in light of the record developed by the parties, although the opinion was obtained for litigation purposes.

We hold that substantial evidence supports the finding of twenty percent permanent partial disability.

■ III. Goss' final argument is in essence bifurcated. Goss alleges that the agency failed to assess and discuss the evidence properly in its decision, in order that the courts might properly review the case. It raises this argument in regard to both the manner of injury and the issue of disability.

The agency decision by a deputy commissioner states the following regarding the original decision on review-reopening by the hearing deputy:

Of course, this review is de novo, and the undersigned deputy industrial commissioner may choose to disagree with the hearing deputy. Here it is simply the case that the hearing deputy's findings of fact and conclusions of law appear to be proper and *are adopted and repeated herein.*

(Emphasis added.)

In addition to the hearing deputy's findings of fact and conclusions of law we have previously quoted, his original review-reopening decision states regarding the work-related nature of the injury:

Based on the foregoing principles, it is found that claimant has established her burden of proof that she sustained an injury arising out of and in the course of her employment. Although Nurse

Bertch testified that claimant reported a different set of circumstances than that testified to by the claimant, his testimony is given less weight because of the following factors:

1. The employer's first report of injury was completed nearly two weeks after the injury.

2. The completion of the first report was accomplished under the assumption that the claimant was employed in another department. In fact, claimant was employed as a crane operator on the date in question as evidenced by the testimony of Timothy Steel.

The evidence indicates that the history given to Dr. Sloan on July 9, 1980 shows that claimant had hurt herself "stepping on a bolt at work," and that "she slipped but caught herself and felt her back pop" (defendant's exhibits D and E). This appears to be at variance with the history of the plant nurse and claimant's own history. However, it is significant that the description of the injury given to Dr. Sloan, is *not inconsistent* with claimant's version of events.

The claimant has shown the undersigned that she has established her claim by a preponderance of the evidence. Claimant also established that Dr. Sloan's history may be in error. Although Dr. Sloan states that he never examined claimant rectally, claimant testified that she was so examined (one presumes claimant would recall this). Claimant's steady weight loss due to constipation secondary to the broken coccyx has been consistent.

We find that this and the previously quoted findings and conclusions are a sufficient statement of the facts as to the work-relatedness issue to permit judicial review.

The second prong of the argument is that the agency's finding as to percentage of disability is incomplete. The hearing deputy originally found:

The next problem which must be resolved is whether claimant is entitled to permanent partial disability. Dr. Turner feels that claimant has no permanent impairment. Dr. Walker feels that claimant has a 25 percent impairment to the body as a whole. Dr. Turner does concede, however, in his second deposition that claimant has a prominent sacrum and that the pain might be transferred to the spine .... It would also appear that Dr. Walker uses factors other than physical impairment in his rating. Dr. Walker, too, concedes that claimant may have more problems than those related to the coccyx—he diagnosed spina bifida occulta. Be this as it may, there is sufficient evidence to find that claimant's preexisting pelvic problems have been aggravated by the injury.

In this and the previous findings and conclusions the hearing deputy sufficiently laid out the basis of his decision, and the agency adopted it. We think that such a recitation is sufficient for judicial review purposes.

We uphold the decision of the district court.

AFFIRMED.