## Gayer *v.* Quaker Hair Goods Company, et al.

Argued February 11, 1972, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Sheldon L. Albert,* with him *John R. Padova* and *Solo, Bergman, Trommer, Padova & Albert,* for appellant.

*Roger B. Wood,* with him *Joseph R. Thompson,* for appellees.

OPINION BY JUDGE MENCER, April 11, 1972:

On June 2, 1965, claimant, Israel Gayer, president, board member and owner of 42% of the stock of the defendant, Quaker Hair Goods Company (Quaker), a family corporation, fell while in the course of his employment. He sustained a serious injury to his ankle resulting in ankylosis of the same. It is not disputed that he sustained a permanent partial disability. The issue here is whether that disability resulted in a loss of earning power.

A compensation agreement, dated July 1, 1965, was entered into by the parties and approved by the Bureau of Workmen's Compensation on October 22, 1965. This agreement indicates that Israel Gayer (Gayer) was receiving a salary of $40,000 a year at the time of the accident. It also contained the following statement: "Disability began 6/3/65 instead of 6/2/65 as stated on accident report. It is admitted by the parties to this agreement that the claimant is receiving full wages during the period of disability and the compensation rate as shown is included in the payment of his weekly wage. Claimant suffered no injury other than stated above."

This language is deemed to have as its purpose the expression of accord by the parties that compensation be suspended because claimant's injuries were not reflected, as of July 1, 1965, in a loss of earnings. Thereafter, on July 5, 1966, claimant petitioned for modification, alleging that "[t]he inadequate healing process and residual difficulty existing in claimant's right leg has resulted in a permanent partial disability impairing his earning capacity."

After a series of hearings, the Workmen's Compensation Referee made an award of compensation benefits

to Gayer. Quaker appealed to the Workmen's Compensation Board (Board) which reversed the Referee and sustained the appeal. Gayer then appealed to the Court of Common Pleas of Philadelphia County which sustained the decision of the Board. Gayer has now appealed to this Court from the decision of the court below.

Our scope of review, since the decision of the Board was against the appellant-claimant, is whether the Board's findings of fact are consistent with each other and with its conclusions of law and order and can be sustained without a capricious disregard of the evidence. *Frombach v. United States Steel Corp.*, 2 Pa. Commonwealth Ct. 556, 279 A. 2d 779 (1971) ; *Bednar v. Westinghouse Electric Corporation*, 194 Pa. Superior Ct. 10, 166 A. 2d 305 (1960).

Here our review centers on whether the Board's third finding of fact can be sustained without a capricious disregard of the evidence. The Board found as a fact the following: "3. Any loss of earnings sustained by the Claimant is not the result of his partial disability."

The Board's opinion explains the two reasons why it made its third finding of fact. Neither reason is valid and we must conclude that the Board's third finding of fact cannot be sustained without a capricious disregard of the evidence in this case.

The Board first noted that ". . . nothing actually changed since the execution of the compensation agreement. At the time it was executed Claimant's salary had been reduced and his disability, insofar as what he could or could not do, was fixed." The Board was totally mistaken on this pivotal point. The undisputed evidence establishes that Quaker utilized a fiscal year commencing February 1st of each year and ending January 31st of the following year. More significant was the **evidence** that claimant's salary would be determined

near the close of each fiscal year by the Board of Directors and that the salary paid claimant was on a one year deferred basis. The result of this compensation policy was that claimant's salary for the 1965 fiscal year was paid in the 1966 fiscal year.

Therefore, when the parties entered into the compensation agreement of July 1, 1965, claimant was being paid a salary of $40,000 for the fiscal year beginning February 1, 1964 and ending January 31, 1965. His salary had not yet been determined for the fiscal year commencing February 1, 1965, that being the fiscal year in which the accident occurred. In fact, it was on December 24, 1965 that the Board of Directors of Quaker reduced claimant's salary to $25,000 a year for the fiscal year period of February 1, 1965 to January 31, 1966. Accordingly, when the Board concluded that "[a]t the time it [compensation agreement] was executed Claimant's salary had been reduced . . .," the Board was in error on this vital point and was guilty of a capricious disregard of the evidence to the contrary.

Further, the evidence conclusively establishes that the reduction of claimant's salary was because of his inability, due to the injuries he suffered from the accident, to perform the services theretofore performed by him. The decline of Quaker's gross profits and the need to hire a new employee to do a portion of the work formerly performed by claimant were direct consequences of his injuries and factors explaining the decision to reduce claimant's salary. Increased salesmen's salaries and decrease in shipping expenses following the accident were other consequences of claimant's curtailed activities for Quaker following the accident. Testimony of the attending physician, company accountant, fellow employee and claimant established that after the accident claimant was unable to resume his full duties with re-

gard to shipping, office work, quality control, buying and selling and that his pre-accident 60-hour work week was reduced to 30 or 35 hours per week. We are of the opinion that the Board's conclusion that the reduction of claimant's salary was a device to obtain compensation and not related to any disability constitutes a capricious disregard of the evidence.

We now pass to the Board's second reason for arriving at its third finding of fact which is stated by the Board as follows: "It does not appear proper to allow a claimant to take advantage of the corporate veil to secure compensation and at the same time hide behind it to show a loss of earnings." The Workmen's Compensation Act of June 2, 1915, P. L. 736, Art. I, §104, as amended, 77 P.S. §22, defines employee to include "[e]very executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation. . . ." There can be no doubt that claimant is an employee under the Workmen's Compensation Act and entitled, subject to the qualifying provisions of the Act, to coverage. Here premiums paid for such coverage were based on executive compensation.

Absent a showing of fraud or improper corporate manipulations designed to circumvent the public policy encompassing the Workmen's Compensation Act, courts will not sanction a disregard of the corporate entity merely because the corporate stock is closely held or family owned. *Babis v. Mt. Jacob Cemetery Company,* 179 Pa. Superior Ct. 616, 118 A. 2d 588 (1955). There must be present some item of unfairness, injustice or some compelling public policy favoring such disregard. *Tucker v. Binenstock,* 310 Pa. 254, 165 A. 247 (1933). Here no such unfairness or injustice is involved.

The evidence does not suggest that the reduced salary inured to claimant's benefit in the form of increased dividends or by the improved capital position of Quaker

or in any other way. However, claimant endeavored to introduce evidence on this point but was unable to do so because the insurance carrier's objection to such evidence was sustained.

The Board's discretion as the ultimate factfinder must be qualified by its obligation to deal objectively with the evidence before it. Here the Board candidly but incorrectly viewed the evidence by a different standard because claimant was the president of a family corporation rather than an ordinary employee. The Board in its opinion said: "We would not hold an 'ordinary' employee bound by a mistake[1] [amount of claimant's salary on a given date] such as this, but where it involves a Claimant, the president of a family corporation, within whose knowledge are all the facts, we apply a different standard."

We believe in this case that the Board's application of "a different standard" resulted in the Board's third finding of fact, second and third conclusions of law and order, none of which can be sustained without a capricious disregard of the evidence.

The orders of the Court of Common Pleas of Philadelphia County and of the Workmen's Compensation Board are vacated, and the award made by the Referee is reinstated.

---

[1] We have concluded earlier in this opinion that the Board was in error in considering the $40,000 salary figure in the July 1, 1965 compensation agreement as a mistake. (Footnote added.)