508 A.2d 1324

William Andring, Petitioner *v.* Workmen's Compensation Appeal Board (Keystone Coal Mining Corporation), Respondents.

Submitted on briefs February 6, 1986, to Judges
MACPHAIL, DOYLE and COLINS, sitting as a panel of three.

*David J. Tulowitzki, Pawlowski, Long, Creany &
Tulowitzki,* for petitioner.

*George H. Thompson, Tillman & Thompson,* for re-
spondent, Keystone Coal Mining Corporation.

OPINION BY JUDGE MACPHAIL, May 9, 1986:

William Andring (Claimant) appeals from an order
of the Workmen's Compensation Appeal Board (Board)
affirming the decision of a referee which dismissed
Claimant's petition for compensation under the occupa-
tional disease provisions of The Pennsylvania Workmen's
Compensation Act (Act).[1] We reverse.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1031.

The referee found that Claimant was last employed in the bituminous coal mining industry by Keystone Coal Mining Corporation (Keystone) from sometime in 1967 to October 23, 1980. The referee also found that Claimant is disabled, either totally or partially, due to coal worker's pneumoconiosis and that the Claimant first knew or should have known that he was disabled in December of 1980. The referee denied benefits because he found that the Claimant did not give notice of his injury to Keystone until November 11, 1981, which is not within 120 days as required by Section 311 of the Act.[2]

The Claimant has the burden of showing that he is entitled to benefits. *Tady v. Workmen's Compensation Appeal Board (Republic Steel Corp.)*, 86 Pa. Commonwealth Ct. 582, 485 A.2d 897 (1985). Where the party with the burden of proof has not prevailed before the referee, our scope of review is limited to determining whether the referee's findings are in capricious disregard of any competent evidence and are consistent with each other, and whether any errors of law were committed or constitutional rights violated. *Id.*

---

[2] 77 P.S. §631. This section provides: .

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease.

Our review of the record reveals that both parties stipulated on September 8, 1982 before the referee that Keystone received a Notice of an Initial Finding of disability on a Federal Black Lung claim within a day or two after February 25, 1981. Claimant avers that this initial finding by the U.S. Department of Labor (Department), communicated to Keystone, supplied knowledge of Claimant's disability to Keystone within the 120 day limit.

The sole issue presented to us by the instant appeal is whether the referee capriciously disregarded competent evidence or committed an error of law when he concluded that Claimant is not entitled to benefits due to Claimant's failure to give notice to Keystone in accordance with the Act. Keystone argues that the Notice of an Initial Finding from the Department was not sufficient notice under the Act because the notice given to an employer in a Federal Black Lung proceeding is not identical to the notice required to be given to an employer when a state claim is filed — namely, that a claimant has coal worker's pneumoconiosis and is disabled by the disease.

Under the pertinent federal regulations, the Department is to gather medical evidence after a Black Lung claim is filed, but before a hearing is held. 20 C.F.R. §725.405 (1978). Then, "[b]ased upon the evidence developed, the deputy commissioner may make an initial finding with respect to the claim." 20 C.F.R. §725.410(a) (1978).

Another federal regulation establishes the guidelines for making an initial determination of disability:

> (A) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... arising out of that employment, if one of the following medical requirements is met....

20 C.F.R. §727.203(a) (1978). The regulation then goes on to list four possible medical bases which may cause the interim presumption to attach: (1) a chest x-ray, (2) ventilatory studies which establish the presence of a chronic respiratory or pulmonary disease, (3) blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood and (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, which establishes the presence of a totally disabling respiratory or pulmonary impairment.

Yet another federal regulation outlines what sort of notice the Department must give to the mine operator after an initial determination of liability is made:

> After the deputy commissioner identifies an operator which may be liable for payment of benefits, the deputy commissioner shall notify such operator in writing. Such notification shall include a copy of the claimant's claim form and a copy of all documentary evidence pertaining to the claim obtained by the deputy commissioner, if any, and the initial findings of the deputy commissioner, if any. All documents sent to an operator in accordance with this paragraph shall also be provided by the deputy commissoner to the claimant or his or her authorized representative.

20 C.F.R. §725.412(b) (1978). After this notice is given, "a notified operator shall indicate an intent to accept or contest liability" within 30 days. 20 C.F.R. §725.413(a) (1978). In the case *sub judice*, the testimony of Claimant indicates that Keystone's insurance carrier initially decided to contest liability but by letter of July 27, 1981 subsequently decided that it would no longer do so. On September 4, 1981, the Department sent Keystone a proposed decision and order in the case pursuant to 20 C.F.R. §725.413(b)(1) (1978). Keystone apparently never disputed the proposed decision and order.

Keystone argues that the notice it received from the Department in late February 1981 was not sufficient because it did not inform it that Claimant was disabled from coal worker's pneumoconiosis in the sense that the term "disabled" is used in the Act. Keystone notes that it is possible for a miner to go on working, with no loss of earning power whatsoever, well after the Department makes an initial determination of disability. To bolster its argument, Keystone points to a line of decisions which hold that for purposes of determining when a claimant knew or should have known he was disabled, Federal Black Lung proceedings are not dispositive. *See Republic Steel Corporation v. Workmen's Compensation Appeal Board (Honacki)*, 49 Pa. Commonwealth Ct. 29, 409 A.2d 1385 (1980); *Jones and Laughlin Steel Corporation v. Workmen's Compensation Appeal Board (Glemzua)*, 35 Pa. Commonwealth Ct. 610, 387 A.2d 174 (1978). Keystone argues that if a Federal Black Lung award does not provide knowledge to a claimant that he is disabled, a Notice of Initial Finding of disability cannot supply notice of disability to an employer.

In *Honacki*, we noted that "[t]his Court has held that the proceedings for Black Lung benefits, while admissible as evidence of when a Claimant knew or should have known of his disability and the cause thereof, are not conclusive or binding upon the referee." *Honacki* at 34, 409 A.2d at 1388. However, in *Tady* this Court said:

A review of the evidence convinces us that there was no capricious disregard of the evidence by the referee. By Tady's own admission, he was aware he had Black Lung as early as 1968 when he learned the results of a chest x-ray taken by the Bureau of Mines. Tady also testified that a doctor told him in November 1973 that he had Black Lung 'real bad' and should apply for federal Black Lung benefits. Tady applied for

such benefits which were granted retroactive to October 3, 1973. While an application for Black Lung benefits is not conclusive on the issue of whether Tady knew he was disabled in November 1973, ... that application, coupled with Tady's other actions, convinces us that he knew or should have known that he was disabled on account of Black Lung by late 1973.

*Tady* at 586, 485 A.2d at 899 (citation omitted).

It is clear that Federal Black Lung proceedings are, while not conclusive on the matter, one piece of evidence which may be used to determine when a claimant had knowledge of his disability. We think the same may be said of knowledge on the part of an employer. While notice of an initial finding of disability by the Department is not conclusive on the issue, it is one piece of evidence to be used in making a determination.

In the instant case, Claimant had been employed in the bituminous coal mining industry for thirty-nine years. Claimant retired from the mines on October 23, 1980, approximately one week after his fifty-ninth birthday. The referee found that Claimant became aware that he was disabled from coal worker's pneumoconiosis in December, 1980. Keystone received the Notice of an Initial Finding of disability on Claimant's Federal Black Lung claim within a day or two after February 25, 1981. Under these facts, where the Notice of an Initial Finding was received by Keystone subsequent to Claimant's retirement at a relatively early age after a long period of working in the mines, Keystone must be regarded as having knowledge of Claimant's injury within 120 days from the time Claimant himself did.

The notice requirements of Section 311 of the Act are to be liberally construed. *Workmen's Compensation Appeal Board (Bethlehem Steel Corporation) v. Czepurnyj*, 20 Pa. Commonwealth Ct. 305, 340 A.2d

915 (1975). Knowledge of a worker's injury rather than formal notice of that injury, is the criterion for determining whether the notice requirement is satisfied. *Bertrand P. Tracey Company v. Workmen's Compensation Appeal Board (Boles)*, 93 Pa. Commonwealth Ct. 68, 500 A.2d 513 (1985). The purpose of Section 311 of the Act is to protect employers from stale claims of which they would have no knowledge, made after the opportunity has passed for full and complete investigation of the circumstances. *The Travelers Insurance Company v. Workmen's Compensation Appeal Board (Levine)*, 68 Pa. Commonwealth Ct. 24, 447 A.2d 1116 (1982). We feel that Keystone had such an opportunity and that the purpose of Section 311 was served.

It is clear that the referee completely ignored the stipulation of September 8, 1982 in his findings of facts. This stipulation is essential to the determination of whether Keystone had knowledge of Claimant's injury. In ignoring it, the referee capriciously disregarded competent evidence in that both parties, as well as the referee, were bound by the stipulation. As a matter of law, the stipulation, when considered in the factual matrix of the case, compels a conclusion that Keystone had knowledge of Claimant's disability within 120 days of when the Claimant knew he was disabled.

For the foregoing reasons, the Board's order affirming the referee must be reversed.

ORDER

The Workmen's Compensation Appeal Board order at Docket No. A-85121, dated September 6, 1983, is reversed.