# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erie Insurance Property        :
Casualty Company,              :
                Petitioner     :
                         :
          v.             :   No. 148 C.D. 2023
                         :   Argued:  November 6, 2023
David Heater (Workers'       :
Compensation Appeal Board),    :
                Respondent   :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER     FILED:     May 29, 2024

Erie Insurance Property & Casualty Company (Insurer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) that upheld the decision of a Workers' Compensation Judge (WCJ) granting David Heater's (Claimant) Claim Petition.  The WCJ found that Claimant gave timely notice of his injury to his employer, David W. Heater (Employer), a sole proprietorship which Claimant owns and by which Claimant was employed, and that Claimant was injured in the course and scope of his employment.  On appeal, Insurer argues Claimant should have been required to give notice to Insurer within 120 days of the injury and the finding that Claimant's notice of the injury on himself as Employer was sufficient is inconsistent with the purpose of Section 311 of the Workers' Compensation Act[1] (Act), prejudicial to Insurer, and a violation of Insurer's due process rights.  Insurer further asserts the record evidence does not support the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

WCJ's finding that the injury occurred in the course and scope of Claimant's employment and the WCJ's failure to address inconsistencies in the record on how the injury occurred rendered the WCJ's decision not reasoned as required by Section 422(a) of the Act.[2] Claimant responds the Board did not err in affirming the WCJ's decision because neither Section 311 of the Act, nor precedent interpreting that provision, required him to provide notice to Insurer, Employer received timely notice of the injuries, and the credited evidence supports the WCJ's findings of fact and conclusion that Claimant was injured in the course and scope of his employment.

## I.    BACKGROUND

The relevant procedural and factual background have already been set forth by this Court in considering Insurer's request for supersedeas and is as follows.

> Claimant is the owner of . . . Employer[] and was its sole employee up until April 2015. (WCJ Decision/Order, 1/20/2022 (January 2022 Decision), Finding of Fact (FOF) ¶ 1 . . . ; WCJ Decision/Order, 7/21/2020 (July 2020 Decision), FOF ¶¶ 1, 9(b) . . . .) On September 28, 2015, Employer performed roof repairs as a sub-contractor to Pip's Roofing. (January 2022 Decision at 4; July 2020 Decision, FOF ¶ 8(b).) The WCJ found that, while on site that day, Claimant sustained a disabling injury "while coming off a ladder and tripping over a shovel," when he "attempted a tumbling move known as a round-off to land on his feet"; however, "[u]pon landing, Claimant slipped on [] wet grass," fell backwards, and landed on his head. (January 2022 Decision, FOF ¶¶ 5-6, 8-9.) Claimant sustained "a C3 teardrop fracture and spastic quadriparesis[,] for which he underwent immediate surgery[,] including an extensive fusion from C2 to T1[.]" (*Id.*, FOF ¶ 7.)
>
> There was a question as to when Claimant notified Insurer of his work injury. Insurer nevertheless issued a Notice of Workers' Compensation (WC) Denial (NCD) on February 24, 2017, indicating that Claimant "attempted to do a backflip while on a break," i.e., he was not in the course of his employment, and fractured his neck, and that he provided

[2] 77 P.S. § 834.

notice of the injury on February 24, 2017.[] (Certified Record (C.R.) Item No. 58 (Ex. J-01).) . . . On September 6, 2018, Claimant filed [the] Claim Petition, naming Employer and Insurer, alleging he slipped and fell and sustained a cervical spine fracture on September 28, 2015, and seeking ongoing total disability benefits beginning on that date. (January 2022 Decision at 4; C.R. Item No. 2.)

*Erie Ins. Prop. & Cas. Co. v. Heater (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth.,

No. 148 C.D. 2023, filed June 14, 2023) (Cohn Jubelirer, P.J.) (single-judge op.)

(*Erie I*), slip op. at 2-3 (alterations added).

Following proceedings that are unrelated to issues presently before the Court,

the WCJ held

numerous hearings, at which both lay and medical testimony was offered by Claimant and Insurer, [and] the WCJ circulated the July 2020 Decision, denying the Claim Petition. The WCJ concluded Claimant failed to establish he provided timely notice of his alleged work injury to Insurer within 120 days of the injury's occurrence, as required by Section 311 of the . . . Act . . . . (July 2020 Decision at 9-10 & [Conclusions of Law (]COL[)] ¶ 4.) In denying the Claim Petition on this basis, the WCJ acknowledged and explained the following:

Claimant is his own employer, so it **could** be argued that notice was instantaneous. However, [Insurer] is the insuring party in this instance, and notice must be received by the insurer within the time limits of the Act. Even if Claimant's testimony that he called Mr. [James] Reagle to inform him of the injury is credible, it is not proper notice. Mr. Reagle is an insurance agent, not the insurer. Notice should have been given to the claims offices of [Insurer]. Claimant has not offered evidence of such notice to [Insurer] **at any time** following the injury. It is unclear how [Insurer] finally received notice in February 2017. Perhaps Mr. Reagle forwarded the information to [Insurer] after receiving the call from Claimant's counsel's office [in February 2017]; neither party addressed that hole in the evidence. This [WCJ] notes the 2/24/2017 [NCD] states notice was received on 9/28/2015, the alleged injury date. However, this is just sloppiness on the part of [Insurer].

3

> There is no evidence in the record, credible or otherwise, that notice was made on the date of injury.

(*Id*. at 9, *see also* FOF ¶ 10(c) (emphasis in original).) Thus, the WCJ concluded that Claimant was precluded from receiving any compensation under Section 311 of the Act based on his untimely notice to Insurer. (*Id*. at 9.) . . . Claimant . . . appealed to the Board. Claimant challenged the WCJ's findings and conclusions on the notice issue . . . . (C.R. Item No. 9.)

 . . . .

By opinion and order mailed on July 29, 2021, the Board . . . reversed the WCJ's decision . . . that Claimant failed to give timely notice of the work injury. (Board Opinion (Op.) & Order, 7/29/2021 (Board 2021 Op.) at 4-13 . . . .) In reversing . . . , the Board relied on *Travelers Insurance Company v. Workmen's Compensation Appeal Board (Levine)*, 447 A.2d 1116 (Pa. Cmwlth. 1982), and agreed with Claimant's argument "that because he was his own employer," notice of the work injury was instantaneous, and, further, that Section 311 of the Act does not require that notice be given to an insurer. (Board 2021 Op. at 4-5.) The Board also remanded the matter to the WCJ for a determination on the remaining merits of the Claim Petition.[] (*Id*. at 12-13.)

Following the Board's remand, the WCJ circulated the January 2022 Decision, in which he summarized the evidence and the lay and expert medical testimony from the prior hearings and depositions on the merits of the Claim Petition and granted the Claim Petition. The WCJ concluded Claimant established that, on September 28, 2015, he suffered an injury in the course and scope of his employment that totally disabled him as of that date and ongoing and prevented him from returning to his pre-injury position. (January 2022 Decision, FOF ¶ 9 & COL ¶¶ 4-6.) In so doing, the WCJ found credible Claimant's live and deposition testimony as to the events and mechanics of his work injury and his wages, as well as both Sandeep Singh, M.D.'s (Claimant's expert) and Robert Mauthe, M.D.'s (Employer's expert) deposition testimony in which they essentially agreed on Claimant's injury and physical capabilities because of the work injury. (*Id*. at 4-5, FOF ¶¶ 5-9.) The WCJ determined "the evidence of record does not establish that Claimant was performing a backflip when he suffered his injury" and "there is no evidence of record that Claimant was on a break from his work duties" when he suffered his injury, as Insurer alleged.

4

(*Id.* at 7.) The WCJ also found, based on his and the Board's prior decisions, that . . . Insurer received timely notice of Claimant's work injury, and that Claimant's average weekly wage was $1,200.00 as of September 28, 2015, resulting in an $800.00 weekly compensation rate. (*Id.*, FOF ¶¶ 2-4 & COL ¶¶ 3(a)-(c), 7.) . . . Accordingly, the WCJ granted the Claim Petition and ordered Insurer to pay Claimant total disability benefits at the weekly rate of $800.00 plus statutory interest and all reasonable and necessary medical expenses related to the September 28, 2015 work injury, and to deduct 20% from all wage loss benefits paid to Claimant and pay that sum directly to Claimant's counsel according to their fee agreement. (*See id.* at 9, Order.) Claimant and Insurer appealed to the Board.

In its appeal, Insurer . . . argued that the WCJ erred in crediting Claimant's testimony and evidence on how the injury occurred and finding that Claimant's injuries occurred in the course and scope of his employment. Insurer also challenged the WCJ's determination as to notice of the work injury, asserting the *Travelers* [*Insurance*] case, upon which the Board relied, is distinguishable, and that Claimant's failure to timely notify Insurer violated its due process rights because it prevented Insurer from conducting a timely investigation into the claim. (*See* C.R. Item No. 19.)

. . . .

By opinion and order mailed on July 29, 2022, the Board affirmed the WCJ's decision and order granting the Claim Petition . . . (Board Op. & Order, 7/29/2022 (July 2022 Board Op.) at 1, 13-14 . . . .) . . . The Board [] rejected Insurer's argument that Claimant was injured outside the course and scope of his employment, i.e., when he attempted a backflip "to impress his co-workers" while on a break from his work duties, and its challenge to the WCJ's credibility determinations, noting the WCJ found Claimant's testimony and both Claimant's and Insurer's expert medical evidence credible, which was within the WCJ's province as factfinder. (*Id.* at 7-12.) Further, the Board noted, the WCJ specifically did not find that Claimant was attempting a backflip while on a break from his work. (*Id.* at 12.) The Board thus determined it could not reweigh the evidence or overturn the WCJ's credibility determinations, as Insurer requested. (*Id.*)

5

*Erie I*, slip op. at 3-8 (some alterations and omissions added).  After a second remand to address another issue not relevant to this appeal, the WCJ issued a third decision, and

> Insurer appealed to the Board, "rais[ing] and preserv[ing] issues raised previously on appeal that could not be further appealed to the Commonwealth Court due to the Board's remand order." (C.R. Item No. 29.) . . . Insurer reiterated the arguments from its prior appeal to the Board from the WCJ's January 2022 Decision, i.e., that the WCJ erred in finding that:  [] Claimant was injured in the course and scope of his employment; . . . ; [] Claimant's testimony as to the mechanism of injury was credible; [and] Claimant provided timely notice of injury . . . . (*Id*.)  Insurer also filed [a] Motion to Finalize [the Board's July 2022 Opinion (Motion to Finalize)], so it could take an immediate appeal to this Court of the prior legal rulings in the July 2022 Opinion without the need for further proceedings before the Board.  (C.R. Item No. 31.)  By opinion and order mailed on January 30, 2023, the Board granted Insurer's Motion to Finalize its . . . July [] 2022 [Opinion], and indicated that Insurer's stated issues are preserved for further appeal. (Board Op. & Order, 1/30/2023 (January 2023 Op.), at 4-5 & Order . . . .)

*Erie I*, slip op. at 8-9 (some alterations and omissions in the original).

Insurer now petitions this Court for review.[3]


## II.   DISCUSSION
### A.  Issues

On appeal,[4] Insurer sets forth two issues for this Court's review.

1. Did the Board and [WCJ] err by determining that Claimant provided timely adequate notice of the injury based upon Claimant[,] sole

---

[3] Insurer sought a supersedeas from this Court, which was denied in *Erie I*.

[4] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).  "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

proprietor[,] **himself having notice** and that notice to Insurer [] was not required, as this case is distinguishable from *Travelers Ins[urance]* . . . , and as this determination is not supported by substantial evidence, and was inequitable, prejudicial[,] and deprived [Insurer] of its constitutional due process rights?

. . . .

2. Did the Board err by affirming the [WCJ]'s determination that Claimant was injured in the course and scope of employment as the [WCJ]'s findings of fact and crediting of Claimant regarding the mechanism of injury are not supported by substantial evidence, and the [WCJ] arbitrarily and capriciously disregarded the relevant competent evidence that every medical record states that Claimant was attempting to do a backflip and which established that his injuries were caused by his horseplay during a break from work; and, as the [WCJ] failed to address or reconcile the glaring inconsistency between the medical records and Claimant's testimony or to issue a reasoned decision?

. . . .

(Insurer's Brief (Br.) at 4 (emphasis in original).)

B. *Notice of the Injury*

1. Parties' Arguments

Insurer argues that in situations where the injured worker is also the owner of a sole proprietorship and, therefore, the "employer," the insurer is the party directly responsible for the work injury, including its prompt investigation, and is entitled to notice of a work injury within 120 days of the occurrence of that injury. Insurer asserts the Board should not have relied on *Travelers Insurance* to hold notice to the insurer within 120 days is not required because that case is distinguishable. *Travelers Insurance*, Insurer points out, did **not** involve a sole proprietorship, which does not have an existence separate from its owner, but involved a closely held **corporation** as the employer, which was a separate entity from the injured officer

7

of the corporation. In the case of sole proprietorships, Insurer argues, there is no notice from an injured worker to a different, legal entity, as in cases where the employer is a corporation, but the notice is from an individual to the same individual, a circumstance the Court in *Travelers Insurance* suggested would be an absurd reading of Section 311. (Insurer's Br. at 23-24.) Insurer maintains that sole proprietors, unlike corporate officers, do not have automatic WC coverage under Section 104 of the Act, 77 P.S. § 22, which places corporate officers, like those in *Travelers Insurance*, in a different position than sole proprietors.

Insurer further argues the Board's decision leads to an absurd result that is inconsistent with and undermines the very purposes of Section 311, which is to provide timely notice of a work injury to prevent claims and evidence from growing stale, as occurred here to Insurer's detriment. The presumption behind Section 311, Insurer asserts, "is that the claimant's employer would undertake a timely investigation into the claim of [i]ts employee." (Insurer's Br. at 26.) But, Insurer argues, where the employer is the sole proprietor and the injured employee its owner, there is a conflict of interest, as it is the injured employee that controls the investigation of their own injury. According to Insurer, in these circumstances, there is no protection for the party ultimately liable for the claim, the insurer, "wh[ich] steps into the employer's shoes," but loses the opportunity to benefit from an employer's "'full and complete investigation of the circumstances[,]'" thereby preventing it from formulating relevant defenses to the claim. (*Id.* at 25-27, 29 (quoting *Andring v. Workmen's Comp. Appeal Bd. (Keystone Coal Mining Corp.)*, 508 A.2d 1324, 1327 (Pa. Cmwlth. 1986)).) Insurer also argues the Court could "interpret Section 311 to require notice to the directly responsible entity" based on the presence of "a gap in the legislative scheme [meaning] the General Assembly

8

clearly did not anticipate the precise scenario here." (*Id.* at 28 (citing *Hannaberry HVAC v. Workers' Comp. Appeal Bd. (Snyder, Jr.)*, 834 A.2d 524, 533 (Pa. 2003)).) Interpreting Section 311 as not requiring notice to an insurer in these circumstances means, Insurer contends, "that a claimant/employer can withhold or materially delay notice to the insurer responsible to pay, and impede a timely investigation, [which] is at complete odds with [Section 311's] purpose." (*Id.* at 28-29.)

Insurer last argues the WCJ's decision is otherwise inequitable, prejudicial, and deprives it of its due process rights. According to Insurer, equitable remedies and defenses have been recognized by the courts in WC matters and it is unfair to find that the employee/owner of a sole proprietorship is not required by the Act to provide timely notice of their injury to an insurer. Insurer further relies on "Federal Black Lung" cases, in which the federal courts have held that the lack of adequate notice on the insurer violates due process, to argue that the same principles should apply in these circumstances. (*Id.* at 30-32.)

Claimant responds that "there is no language in Section 311 requiring notice to the insurer" and "Section 311 requires notice to the employer[.]" (Claimant's Br. at 14, 18.) Claimant maintains this Court confirmed this reading in *Travelers Insurance*, and there is no legal significance, for purposes of the Act, of the different business forms. According to Claimant, *Travelers Insurance* should apply equally to sole proprietorships, as to corporations. Claimant maintains his case is akin to that in *Dick's Delicatessen of Paoli, Inc. v. Workmen's Compensation Appeal Board (DeVirgilio)*, 475 A.2d 1345 (Pa. Cmwlth. 1984), wherein, based on *Travelers Insurance*, this Court rejected an argument that a claimant, who, in addition to being a corporate officer, acted as the manager of a business, was required to provide notice to the business's WC insurer when the claimant was injured. Under both

9

*Travelers Insurance* and *Dick's Delicatessen*, Claimant argues, there is nothing in the Act that limits a claimant's rights to receive benefits or expands the claimant's duties to provide notice when the claimant is a manager or principal officer of a small corporation or business, and actual notice of the work injury on the claimant, as manager/principal officer/owner, satisfies Section 311. Finally, Claimant argues Insurer's reliance on federal case law is misplaced because WC matters are governed by the Act, not federal law.

Insurer responds that *Dick's Delicatessen*, like *Travelers Insurance*, involved a closely held corporation and other officers of the corporation had actual knowledge of the work injury because they were the claimant's family members. Insurer reiterates its arguments that it is the party directly financially responsible, and that *Travelers Insurance* does not support a finding that notice of the injury on the same person who is injured satisfies Section 311's notice requirement because it is plainly at odds with the purposes of that provision. Insurer argues that "where the statutory language is not explicit as to the point at issue," (Insurer's Reply Br. at 5), the Court can consider other matters enumerated in Section 1921(c) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. § 1921(c), as well as presume that the legislature does not intend a result that is absurd or unreasonable, Section 1922(1) of the Statutory Construction Act, 1 Pa.C.S. § 1922(1). Not to require the Section 311 notice be given to the insurer in these circumstances, Insurer asserts, "is an absurd result never intended by the legislature." (Insurer's Reply Br. at 6.)

2. <u>Analysis</u>

At issue is to whom, under the Act, an injured self-employed employee[5] must provide notice of a work injury within 120 days of the injury when the claimant is essentially the employer. Various provisions of the Act address the types of notice that are required to be provided by an employee and by an employer. Insurer argues that Section 311 should be interpreted as requiring an employee/owner of a sole proprietorship (the employer) to provide an insurer with notice of an alleged work injury within 120 days of the injury, and Claimant argues that neither the Act nor precedent interpreting the Act's notice provisions impose any such requirement, speaking only of giving notice to an employer.

Section 311 provides, in pertinent part, that

> [u]nless the employer shall have knowledge of the occurrence of the injury, or unless **the employe** . . . **shall give notice thereof to the employer** within twenty-one days after the injury, no compensation shall be due until such notice be given, **and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed**. . . .

77 P.S. § 631 (emphasis added). "The purpose of Section 311 . . . is to protect employers from stale claims of which they would have no knowledge, made after the opportunity has passed for full and complete investigation of the circumstances." *Andring*, 508 A.2d at 1327. It is long settled that "[c]ourts should not read into the . . . Act a stricter requirement than the language of the Act imports in regard to notice . . . . It must be liberally construed[.]" *Katz v. Evening Bull.*, 403 A.2d 518, 519 (Pa. 1979) (quoting *McCann v. Cross Bros. Meat Packers, Inc.*, 208 A.2d 887, 889

---

[5] We note that as the Act, case law, and the parties use "employee," "employe," "claimant," and "worker" interchangeably to refer to the individual who sustained the alleged work injury, we will do the same.

11

(Pa. Super. 1965)) (first alteration in the original); *see also Canterna v. U.S. Steel Corp.*, 317 A.2d 355, 356-57 & n.1 (Pa. Cmwlth. 1974) (same). "Whether notice has been given is a question of fact." *Katz*, 403 A.2d at 519.

The Board found itself "constrained" to hold that Section 311's notice requirement was satisfied, reasoning that this matter is governed by *Travelers Insurance*, because, in its view, *Travelers Insurance* addressed this scenario and "remain[ed] viable precedent to which it was bound." (Board 2021 Op. at 4-5.) Claimant cites both *Travelers Insurance* and *Dick's Delicatessen* as controlling. Insurer argues both cases are distinguishable, and their analyses are inapplicable to situations where there is no separate, corporate entity to which notice is given, such as where the claimant is the owner of the sole proprietor "employer." We agree with Insurer that these cases are distinguishable and are not controlling.

In *Travelers Insurance*, a **corporate** officer of a close **corporation**, the employer, who was also responsible for handling insurance matters, sustained a work injury and advised a fellow corporate officer of the employer. Almost a year later, the employer informed the WC insurer of the injury, which challenged the claim on the basis that because the employer was a close corporation, the Section 311 notice should have been provided to the insurer within 120 days of the injury. We disagreed, holding that

> [t]here is no case law offered by [the insurer] in support of that proposition.
>
> . . . .
>
> The fact that [the c]laimant was the principal officer of a small **corporation** in no way limits the [c]laimant's right under the Act.
>
> > **Absent a showing of fraud or improper corporate manipulations** designed to circumvent the public policy

12

> encompassing the . . . Act, **courts will not sanction a disregard of the corporate entity** merely because the corporate stock is closely held or family owned.
>
> *Gayer v. Quaker Hair Goods*, . . . 289 A.2d 763, 766 ([Pa. Cmwlth.] 1972). . . . [The insurer] admits, as it must, that Section 311 does not require notice to the insurer; rather, the mandate is for notice to the [e]mployer. [The insurer] argues, nevertheless, that any interpretation of Section 311 other than that which [it has] suggested could lead to an absurd result such as in the case of **a one person corporation** where an injury to the only employee **would require that [the c]laimant give notice of the injury to himself**. It would be our view, **to the contrary, that notice in that circumstance would <u>not be from an individual to an individual</u> but from an <u>individual to a corporation, a different entity</u>**, and in the absence of fraud or improper corporate manipulation, would be valid notice under Section 311. **The result would not be absurd, it would be compliance with the law**. Inasmuch as the Act does not require notice to the insurer in this or any other circumstance and [the insurer] cannot point to any case law or other authority which would warrant us in reaching the conclusion [it] urge[s], we must reject that conclusion.

*Travelers Ins.*, 447 A.2d at 1118-19 (emphasis added).

We applied *Travelers Insurance* in *Dick's Delicatessen*, where the claimant, who was "president, chairman of the board[,] [] 60% shareholder[,]" and manager of a family corporation, sustained a work-related stroke. *Dick's Delicatessen*, 475 A.2d at 1347. Notice of the injury to the insurer was not provided until two or three months after the injury. *Id.* at 1348. The insurer argued, as Insurer does here, that where a "claimant is also the employer, the claimant must give notice to the insurance company in order to permit a prompt investigation of the claim; failure to notify the insurer would result in forfeiture of benefits[.]" *Id.* at 1349. In addition to noting that the other corporate officers, who were the claimant's immediate family, had actual knowledge of the stroke, we broadly stated, citing *Travelers Insurance*, that "[**S**]**ection 311 does not require notice to the [WC] carrier where**

13

**the claimant is also the employer**." *Id.* (emphasis added). That the claimant was a principal officer of a small **corporation** did not limit his rights or enlarge his duties under the Act. *Id.* The insurer also argued that the employer's failure to provide immediate notice as set forth in Section 438(a) of the Act, 77 P.S. § 994,[6] should result in the claimant's forfeiture of benefits. We disagreed, explaining that

> [w]e understand the insurer's concern in these cases where the claimant and the employer, who ordinarily have interests adverse to one another, are interrelated. Without some provision for the enforcement of the employer's duty to provide the [WC] carrier with prompt notification of work-related injuries, the claimant-employer could sit on his claim indefinitely, later requiring the insurer to defend a claim which it did not have a meaningful opportunity to investigate. However, unlike [S]ection 311 of the Act, [S]ection 438 does not contain any forfeiture language, and we find no basis for reading such language into that section. The rights and duties of the employer and the [WC] carrier are contractual matters to be agreed upon by the parties and set forth in the policy of insurance, rather than determined by the legislature. **The [WC] carrier can guard against possible abuse of the** . . . **Act by** close corporations and **sole proprietorships by conditioning coverage on compliance with mandatory prompt notification provisions written into the insurance contract**. Issues concerning the interpretation and fulfillment of contractual provisions of the policy are not for the [WC] authorities to decide[] but can be litigated in a civil action between the parties to the contract.

*Dick's Delicatessen*, 475 A.2d at 1349 (emphasis added).

After carefully reviewing *Travelers Insurance* and *Dick's Delicatessen*, it is apparent that the rationales therein were predicated on the existence of a **separate corporate entity** to whom the injured employee/corporate officer provided notice, *Travelers Insurance*, or other officers of the **separate corporate entity** that had actual knowledge of the work-related injury, *Dick's Delicatessen*. The Court in *Travelers Insurance* specifically reasoned that it would not disregard, or, essentially,

---

[6] Section 438 was added by Section 4 of the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 994.

14

pierce the veil on the **corporate entity**, by finding that the claimant's notice on the close corporation by which he was employed was insufficient for the purposes of Section 311 absent evidence of fraud or manipulation. In doing so, the Court cited *Gayer*, a case that inquired whether a claimant could "take advantage of the corporate veil[,]" 289 A.2d at 766, in a WC matter, thereby invoking that concept of corporate law. *Travelers Ins.*, 447 A.2d at 1118-19. And, while *Dick's Delicatessen* cited *Travelers Insurance* and generally included a reference to claimants who are "the employer" and "sole proprietorships," *Dick's Delicatessen* involved only a close corporation—a legal entity distinct from the injured worker. Judicial holdings must be read against the facts of a case, and an analysis of a factual scenario that is not specifically presented is dicta. *Thomas Jefferson Univ. Hosps., Inc. v. Pa. Dep't of Lab. & Indus., Bureau of Law Compliance*, 162 A.3d 384, 394 (Pa. 2017). Quite simply, neither *Travelers Insurance* nor *Dick's Delicatessen* involved this legal and factual scenario, and the broader language appearing to include it in those opinions is non-binding dicta.[7]

Although Claimant maintains the form of business carries no legal significance and *Travelers Insurance* and *Dick's Delicatessen* should apply regardless of the business form, we disagree. "A sole proprietorship has no existence separate and apart from its owner,[] while a corporation is an independent entity[.]" *The Glidden Co., Inc. v. Dep't of Lab. & Indus.*, 700 A.2d 555, 558 (Pa. Cmwlth. 1997). It was the separate and distinct identity of the corporate employer from the claimant that was paramount in *Travelers Insurance* and *Dick's Delicatessen* and

---

[7] To the extent a court in another jurisdiction and secondary sources reviewing WC law have cited *Dick's Delicatessen* for the broad propositions stated therein, *see Daigle v. Daigle*, 505 A.2d 778 (Me. 1986); 21 Summ. Pa. Jur. 2d. § 14.45 (2023); 39 Standard Pa. Pract. 2d §§ 167:152, 167:153 (2023), the court and the authors of the secondary sources relied on the dicta related to sole proprietors, rather than the actual holding of the case.

15

formed the basis of the Court's rejection of the insurer's absurdity argument in *Travelers Insurance*, 447 A.2d at 1119. In rejecting that argument, the Court distinguished the notice provided in that case, from an individual to a **different** entity, the corporation, and an individual providing notice to himself, finding the former constituted valid notice absent fraud or manipulation, a standard used when piercing a corporate veil, and so not an absurd result. *Id.* Additionally, as Insurer points out, corporate officers are expressly covered by the Act as employees, while self-employed persons are not, 77 P.S. § 22,[8] making the business form relevant in that way. Because this matter does **not** involve a corporate entity and a claimant providing notice to that different entity, the rationale of *Travelers Insurance* and *Dick's Delicatessen*, based firmly in corporate law principles that a corporate entity should not be unnecessarily disregarded, is not controlling, and the Board erred in concluding otherwise.

Although we conclude that *Travelers Insurance* and *Dick's Delicatessen* are not controlling, this does not automatically require reversal as Claimant argues Section 311's plain language, speaking only of notice to the "employer," supports the Board's conclusion. Contrarily, Insurer argues that, under these circumstances—where there is a conflict of interest due to the unity of identity of the injured worker and employer—the insurer "steps into the [] shoes[,]" (Insurer's Br. at 29), of the "employer" to which notice of the work injury is to be given because, otherwise, the purposes of Section 311 are unmet. This, Insurer asserts, would lead to an absurd

---

[8] Section 104 of the Act provides that "every executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation . . . shall be an employe of the corporation[,]" except that executive officers of for-profit or nonprofit corporations who serve voluntarily and without remuneration "may . . . elect not to be an employe of the corporation for the purposes of this [A]ct." 77 P.S. § 22. It also defines "[e]mploye" as "[a]ll natural persons who performs services **for another** for a valuable consideration[.]" *Id.* (emphasis added).

16

result, which the Court must presume the legislature did not intend. Essentially, both arguments implicate the meaning or scope of the word "employer" in Section 311 and how it should be construed to effectuate the legislature's intent.

As we are called upon to engage in statutory interpretation, we are mindful

> that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. C[ou]nty[] of Centre*, . . . 173 A.3d 1162, 1168 ([Pa.] 2017) (citing 1 Pa.C.S. § 1921(b)). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, . . . 985 A.2d 678, 684 ([Pa.] 2009) (citing 1 Pa.C.S. § 1921(b)). In this vein, "we should not insert words into [a statute] that are plainly not there." *Frazier v. Workers' Comp. Appeal Bd. (Bayada Nurses, Inc.)*, . . . 52 A.3d 241, 245 ([Pa.] 2012).

*Alpini v. Workers' Comp. Appeal Bd. (Tinicum Twp.)*, 294 A.3d 307, 320 (Pa. 2023). Additionally, "we interpret statutory language not in isolation, but with reference to the context in which it appears." *Commonwealth v. Kingston*, 143 A.3d 917, 922, 924 (Pa. 2016) (consulting other provisions of the Crimes Code[9] for context and viewing the statute "as a whole" in interpreting unambiguous text). This is because we do not "dissect statutory text and interpret it in a vacuum." *Id.* at 924. Thus, in determining legislative intent, the language of every section of a statute must be read and construed with reference to the entire statute. *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013).

When the statutory language is ambiguous, however, we may ascertain the General Assembly's intent by considering the factors set forth in Section 1921(c) of the Statutory Construction Act, and other rules of statutory construction. *See Pa.*

---

[9] 18 Pa.C.S. §§ 101-9546.

*Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 863 A.2d 432, 436 (Pa. 2004) (observing that "other interpretive rules of statutory construction are to be utilized only where the statute at issue is ambiguous"). "Words of a statute are ambiguous when there are at least two reasonable interpretations of the text under review." *Bowman*, 65 A.3d at 906. Factors that may be considered under Section 1921(c) include "[t]he object to be attained" and "[t]he consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(4), (6). We are further guided by Section 1922(1) of the Statutory Construction Act, which provides that, in ascertaining the intent of the General Assembly, we are to presume that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

Relevant to our inquiry, Section 311 states that "[u]nless **the employer** shall have knowledge of the occurrence of the injury, or unless the employe . . . shall give notice thereof to **the employer** within twenty-one days after the injury, no compensation shall be due until notice be given" and "unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed." 77 P.S. § 631 (emphasis added). Claimant relies on the use of the term "employer" to argue that the legislature intended to exclude an insurer from the notice provision regardless of the circumstances. However, when Section 311 is read in context with other provisions of the Act, two plausible interpretations of that term become apparent.

Claimant's argument presumes that there is a single meaning of the word "employer" under the Act. However, the Act defines the term "employer" two ways, one of which includes the employer's insurer. Section 103 of the Act states

> "employer," as used in this [A]ct, is declared to be synonymous with
> master, and to include natural persons, partnerships, joint-stock

18

companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it.

77 P.S. § 21. Section 401 of the Act provides that "'**employer**,' when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent, **or his insurer if such insurer has assumed the employer's liability** . . . ." 77 P.S. § 701 (second emphasis added).

In *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation)*, 883 A.2d 518, 526-27 (Pa. 2005), the Supreme Court held that these two "divergent" definitions "contribute[d] to the ambiguity" of the term "employer" in Section 204(a) of the Act, 77 P.S. § 71(a) (authorizing, among other offsets and credits, an offset to an "employer directly liable for compensation" for severance payments a claimant receives). The Supreme Court in *Kramer* explained, citing *Brown v. Travelers Insurance Company*, 254 A.2d 27, 28-29 (Pa. 1969) (plurality), that neither of these definitions were "substantive" provisions of the Act, and that where questions of interpreting the Act "have to do with remedial aspects of the Act, and specifically with the **rights afforded** to employers who participate in the [WC] system **and to their insurers**[,]" such as immunity from liability or offsets, the **broader definition** of employer applied. *Kramer*, 883 A.3d at 526-28 (emphasis added). *See also Manolovich v. Workers' Comp. Appeal Bd. (Kay Jewelers, Inc.)*, 694 A.2d 405, 408 (Pa. Cmwlth. 1997) (explaining that the definition of employer in Section 401 "would, for all remedial or procedural purposes, be taken to be a complex entity, including within its scope the compensation insurer" even where the statutory section at issue "fails to mention the insurance carrier").

The Supreme Court further explained that this interpretation was "consistent with fundamental precepts of statutory construction[,]" including that "[s]tatutory

19

words and phrases are to be interpreted with reference to the context in which they appear." *Kramer*, 883 A.2d at 528. In this regard, the Supreme Court looked to Section 305(a) of the Act, 77 P.S. § 501(a), for context as to the meaning of the term "employer" in Section 204(a). Notably, Section 305 appears in the same chapter as Section 311, at issue here. Section 305(a)(1) provides that where an employer purchases WC coverage, the insurer "assume[s] the employer's liability hereunder and **shall be entitled to all of the employer's immunities and protection hereunder**" except in circumstances not applicable here. 77 P.S. § 501(a)(1) (emphasis added). The *Kramer* Court reasoned that limiting the "protection" or "immunity" of the offset for severance benefits only to self-insured employers, which would preclude offsets to WC insurance carriers that likewise bear liability for the payment of WC benefits for the employer with which they contract, "would negate [Section 204(a)]" and create an absurd result. 883 A.3d at 528-29.

Applying *Kramer's* framework here, we similarly conclude that the divergent definitions of employer within the Act contribute to Section 311's ambiguity, and that ambiguity is confirmed when read in context of other provisions, such as Section 305(a)(1). Section 311 relates to the **right** afforded to employers to receive timely notice, within 120 days of an alleged work injury and, if timely notice is not received, **immunity** from any WC claim arising from such injury. It also **protects** employers against stale claims and the inability to perform prompt investigations due to the failure of an injured worker to provide timely notice. The fact that Section 311 addresses the rights, immunities, and protections of an employer suggests, under *Kramer*, that the broader definition of employer, which would include the employer's insurance carrier, should apply. *Kramer*, 883 A.3d at 526-28.

20

Furthermore, when Section 311 is read in context with Section 305(a)(1), the ambiguity becomes more apparent. Section 305(a)(1) ensures the insurer's "entitle[ment] to all of the employer's **immunities** and **protection**" as the corollary to the insurer assuming the employer's liability. 77 P.S. § 501(a)(1) (emphasis added). If Section 311 is read using only its plain language or the narrow definition of employer in Section 103, it is consistent with the legislature's use of the general term and common usage of the term "employer." *See* Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a) (stating "[w]ords . . . shall be construed . . . according to their common and approved usage"). And, under non-sole proprietorship circumstances, this reading makes sense, as an employer that does not share a unity of identity with the claimant is more likely to engage in a prompt investigation of its employee's alleged injury to protect its own, and its insurer's, interests. However, this reading has the potential to eliminate an insurer's "entitle[ment] to all of the employer's immunities and protection" guaranteed by Section 305(a)(1) in this situation, where a self-employed claimant/employer notifies themselves of their own injury and waits until just before the expiration of the three-year period for filing a claim petition set forth in Section 315 of the Act, 77 P.S. § 602, to notify the insurer. In contrast, reading Section 311 using the broader definition of employer in Section 401, which includes an employer's insurer, in these circumstances may not be consistent with the common usage of the term "employer." Nevertheless, this reading is more consistent with Section 305(a)(1) and the purposes of Section 311 under these circumstances. As two reasonable interpretations of the term "employer" exist, Section 311 is ambiguous. *Bowman*, 65 A.3d at 906.

21

Having concluded that Section 311 is ambiguous where there is unity of identity between the injured worker and sole proprietor employer, we turn to Sections 1921(c) and Section 1922(1) of the Statutory Construction Act to aid in ascertaining the legislature's intent. First, interpreting Section 311 using the broader definition of employer and requiring an injured claimant/employer to provide notice to the insurer within 120 days in these circumstances meets the object to be obtained by that provision in that its purpose is to protect against stale claims, notice of which is given "after the opportunity has passed for full and complete investigation of the circumstances." *Andring*, 508 A.2d at 1327. Notice by the claimant on the insurer in these circumstances allows the insurer, rather than the claimant/employer (who has an obvious interest in the outcome of such investigation), to control the investigation of an alleged work injury sustained by a claimant/employer that may otherwise be delayed to the detriment of the insurer.

Second, the consequences of interpreting Section 311 otherwise creates a potential class of claimants, those who are sole proprietors and injured, who are not subject to the forfeiture/loss of benefits provision of Section 311 for failing to give notice within 120 days of the injury, unlike other, non-self-employed claimants who must give such notice to their employers. Sole proprietor claimants can, in essence, control the investigation of their own injury by delaying notice on the insurer until the last possible moment, sometimes years after the injury, as Claimant did here, thereby defeating the purpose of this provision. This leaves the insurer, which bears the ultimate liability for the claim, unprotected from stale claims and without the ability to timely investigate and formulate all of its possible defenses.

22

Both of these reasons, which support the use of the broader definition of "employer," also have the benefit of avoiding absurd results, which we are to presume the legislature did not intend. 1 Pa.C.S. § 1922(1).

For the foregoing reasons, we hold that, under these circumstances, where a claimant is both the injured employee and the sole proprietor/employer, the "employer" to whom the claimant must notify of a work-related injury for the purposes of Section 311 is the insurer that bears the ultimate liability for the claim. This allows the insurer to ensure that the prompt and complete investigation into the claimed injury, that would normally be performed by a disinterested employer, can be performed to protect against stale claims, thereby meeting the purpose of Section 311. *Andring*, 508 A.2d at 1327. Because Claimant did not provide timely notice to Insurer under Section 311, "no compensation shall be allowed[,]" 77 P.S. § 631, and Claimant's Claim Petition is barred.[10]

## III.   CONCLUSION

For the foregoing reasons, the Board's Order upholding the grant of the Claim Petition is reversed.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[10] As a result of this conclusion, we do not address any of Insurer's other arguments on the notice issue or its issue that Claimant was not injured in the course and scope of his employment.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erie Insurance Property &amp;      :
Casualty Company,      :
             Petitioner      :
     :
         v.      :    No. 148 C.D. 2023
     :
David Heater (Workers'      :
Compensation Appeal Board),      :
             Respondent      :

## O R D E R

**NOW**, May 29, 2024, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **REVERSED**.

_____
**RENÉE COHN JUBELIRER,** President Judge